We'll start with the motion, Delaware Riverkeeper Network versus New York State Department and Millennium Pipeline. Okay, good morning. Good morning. Thanks. Aaron Stumpwitz on behalf of petitioners, the Delaware Riverkeeper Network and the Delaware Riverkeeper. At this time, if I may ask the court if I could have one minute of rebuttal time. It's unusual, but you got it. Thank you, Your Honor. So in my comments today, I'd like to touch on three primary issues for the court. One is the timeliness of our appeal. Second, whether or not the issuance of the permit is an action or order pursuant to 717RD1 of the Natural Gas Act. And three, our likelihood of success on the merits. And so to begin, I'd like to start with timeliness. 717RB of the Natural Gas Act contains an explicit statute of limitations for appeals brought under that section. And that is 60 days. 717RD1 contains no such limitation. Our jurisdiction would be for proceedings under the Gas Act, right? Correct, yes, Your Honor. And I think the Third Circuit made clear in the Delaware Riverkeeper Network versus Pennsylvania Department of Environmental Protection that there is no time bar for appeals such as this. Specifically, the court there said PAYDEP, which is the Pennsylvania equivalent to the NYSDEC, argues that because Riverkeeper's petition would be untimely before the Environmental Hearing Board, it is also untimely before us. We reject that argument because the regulation governing appeals before the Environmental Hearing Board does not define the timeliness of petitions before this court. Opposing parties here cite to 17-0909 for the proposition that we should abide by state law. It's simply not the case. If you look at 17-0909, it states, all orders or determinations of the department shall be subject to review as provided in Article 78 of the Civil Procedure Law and Rules. And if you go to Article 78, it pretty clearly states that where the proceedings are brought is before a New York Supreme Court. So going back to the statement made in the Third Circuit case, that does not define the timeliness of a petition before this court. That is strictly governed by the Natural Gas Act. So opposing parties' arguments on that matter, on timeliness, are meritless. Now, moving quickly to whether or not the issuance of the permit is an action or order under 717RD1, I again go directly to the text of 717RD1, which states that this court has exclusive jurisdiction over any civil action for the review of an order or action of a federal agency or state administrative agency acting pursuant to federal law to issue, condition, or deny any permit, license, concurrence, or approval required under federal law. Here we have the issuance of a permit required under federal law. And that's very clear from the definitions section contained in the SPDES permit itself, which states- Could you address yourself briefly to your standing? Yes, Your Honor. We have affidavits that were included in the petition for review that pretty explicitly state that we have a recreational- or that our members, and specifically our executive director, has a recreational and aesthetic interest in the area being disturbed by the proposed construction of the Eastern System Upgrade Project. Well, I mean, so do I. So do you. So do we all. Yeah, so she specifically avers in her affidavit that she has visited the area and will visit the area again in the future. And that area, to the extent that project construction occurs without proper oversight- But the only litigant is the Delaware Riverkeeper Network. It's the Delaware Riverkeeper and the Delaware Riverkeeper Network. And what is the standing of those entities? So the Delaware Riverkeeper herself, Maya Van Rossum, is the executive director and a member of the Delaware Riverkeeper. She is the Delaware Riverkeeper. Correct. Maya Van Rossum, that's correct. She's the executive director, which is also the Delaware Riverkeeper. And so that's her standing there. So to get back to my point about whether or not this is an action or order, the definition section of the SPDES permit itself states that New York State's Pollutant Discharge Elimination System is a NPDES-approved program with permits issued in accordance with the Environmental Conservation Law. Further, it states the general SPDES permit means a SPDES permit issued pursuant to several provisions of state law. But wasn't it? Wasn't the general permit issued under the appropriate section? So we're talking about a specific authorization under the general permit, which is what's being appealed here, versus the general permit itself. And so the definition section says permits with an S, permits issued in accordance with the Environmental Conservation Law. It clearly contemplates the authorization of coverage or the issuance of a permit under that section. So if each notice of intent is treated as a permit, then what's the idea of having a general permit? So the idea is that there's... I know this is basic, but I... Sure. No, no problem. I'm not arguing that there needs to be an independent, site-specific review of every general... But that's what you're seeking. No, we're seeking compliance with the Clean Water Act, public participation portions of the Clean Water Act, which only requires an opportunity for a hearing, not necessarily having a hearing. Only the opportunity of a hearing and the opportunity to be able to view and review the actual NOI and the stormwater pollution prevention plan as well. Right now, they don't have that opportunity. If I'm a landowner with a stream going through my backyard, and there's going to be a discharge of a million gallons of who-knows-what into that stream, I have no idea when that's going to occur. I have no idea how that's going to occur. I have no idea what measures are in place until potentially after it occurs. And what we're seeking here is simply process. Didn't Millennium make an application to the Federal Energy Regulatory Commission with respect to this? Correct, Your Honor. And the riverkeeper had an opportunity to comment at that time? Yes, on... And did. Yes, and did. And that is a completely separate proceeding. The Federal Energy Regulatory... But it's the very same project. It's the same project, but a completely separate proceeding. Well, you didn't approve of the project. You objected to it, correct? Correct. Yes. I'm sorry. Sorry, Your Honor. Just in what way is it separate? So the Federal... Sure. The Federal Energy Regulatory Commission issues an order related to what's called a Certificate of Public Convenience and Necessity. That is a completely separate proceeding. The Federal Energy Regulatory Commission is the lead agency for the purposes of the National... Sorry, NEPA. So that's sort of their realm, right? The states deal with the Clean Water Act, for example, a Section 401 water quality certification or a NPDES program approval. It's completely separate proceedings. The Natural Gas Act has separate appeal mechanisms for these two different appeal processes. So Millennium contends that we had noticed that this could have occurred, that there was going to be a discharge, and they had the permit through one of their letters that they filed with the Federal Energy Regulatory Commission. As averred in the affidavit, we had no recollection or there was no evidence that we were indeed aware. But I think that brings us to an important point, which is that courts have already sort of looked at this issue and have rejected the premise that project applicants themselves can provide adequate public notice by burying such notice within thousands of pages of comments to an agency. Such an action would, quote, turn notice into an elaborate treasure hunt in which interested parties must search the record for the buried treasure of a possible relevant comment. And that comes from Small Refiners Lead Phase Down Task Force v. U.S. EPA 705F2D506550. That's from the D.C. Circuit in 1983. You've reserved a minute's rebuttal. Thank you. Good morning, Your Honors. Lisa Burianic, Assistant Attorney General for the State of New York. Coverage under the 2015 Construction General Permit is not an order or action subject to this court's jurisdiction under the Natural Gas Act. And the motion for stay should be denied because petitioners have not and cannot establish that they've met the requirements for a stay. And it should be- You have a general permit. And then you have any number of projects that can take place under the auspices of that general permit, right? Just with a notice of intent. Yes. The notice of intent is filed- How can anybody challenge any project at all? Because the general permit just covers for permits in this general area. And you could have-I mean, this is a considerable project. You know, it's an eight or nine-mile pipeline. That's the length of Manhattan Island. And you're saying this is just something that's just subsumed within the general permit and you don't have to give any separate notice to anybody because there's nothing here to see. The general permit is not the only authorization that is required for approval of this particular project. As the court noted, there were FERC proceedings and department proceedings to review petitioner-excuse me- to review Millennium's application to construct this pipeline. And both of those reviews required environmental assessments that were common. And the fact of the matter is that the general permit is only one small portion of the approvals that FERC required. Are you saying that you can't file the notice of intent until you've surmounted these earlier hurdles at which people have notice and have an opportunity to be heard? Well, Millennium actually filed in their application. They indicated that they would be seeking coverage under the general permit. And they also filed the notices of intent to be covered in the FERC proceeding. So the petitioners had reason to know that Millennium was going to be seeking coverage under the general permit. It was also part of the FERC environmental review. And the permits also dealt with- the state's permits included the 401 water quality certification, Article 15 and 24 permits to cover wetlands, as well as the requirement for Millennium to obtain coverage under the general permit. Is this wetlands? There are wetlands involved. Those are the Article 15 and 24 permits. Your Honor, we would suggest that the court review the court of appeals decision in NRDC versus the department. This was a case that reviewed a general permit. And in that decision, the court found, while it was in a different general permit context, that notices of intent are not permits or permit applications. And they did not require public notice and comment. In fact, that court noted that public notice and comment that's required under the Clean Water Act, that requirement had been satisfied when that general permit was issued by the department. And we would submit that in this case, when the 2015 general permit for construction stormwater was issued, that is when the department satisfied the requirements of the Clean Water Act. Does the Riverkeeper and the Riverkeeper Network have standing? And if-my second question is, if not, who does? In this-Riverkeeper, I would submit to the court-the Delaware Riverkeeper does- Because of this permit being available to Millennium. They don't have an injury. There is no irreparable harm. They don't have standing, right? Yes, Judge. So who does? Does nobody have standing? Well, they are not-Riverkeeper is not without remedy. The fact is, is that while they might-they may not have standing to bring this particular Natural Gas Act challenge on the general permit, they could have brought a challenge to the 401 water quality certification, which encompasses all of the state permits to ensure water quality. What would be the basis for the Riverkeeper standing to do that? They were a party in the FERC proceeding, and they have-they opposed the FERC license. Well, they were a party to this proceeding. And they started it, didn't they? Yes. The-yes, but they have not been injured by the issuance of permits by the department because those permits serve as mitigation for any of the environmental harms that they're claiming. They had-they had notice. They had- When is construction scheduled to start? It's my understanding, Your Honor, that the-that there is some construction or pre-construction work going on in various parts of the project, but I would defer to my counsel-co-counsel on that issue. Thank you. Good morning, Your Honor. I want to first touch on, Judge Jacobs, your question about how a party like Delaware Riverkeeper could know about these permits. And I'd like to direct the Court's attention first to our supplemental appendix, which is in our motion to dismiss in opposition to the stay motion. If you look at page 36 of that supplemental appendix, this is the general permit. This is our first exhibit. And if you look at sub-app 36, there is a section of the general permit, section 7F, that specifically says that the holder of a general permit needs to make available to the public within five days of any written request, any notices of intent, and stormwater pollution prevention plans, which go by the acronym SWP. So that is how a party like Delaware Riverkeeper would have notice. And where would they look to get the notice? They would look to get the notice- And that goes to your point about the FERC proceeding. The FERC proceeding was filed in July of 2016. And in that proceeding, in the very first application, the certificate application, Millennium said, among other things, we intend to seek coverage under the New York general permit for construction stormwater discharge. They said it again in August of 2016 when they actually filed in FERC. And this is at the point where Delaware Riverkeeper is a party receiving service of all of these things. But if they had come forward then and commenced this proceeding, you would have said it was premature. If they had come forward then and commenced this proceeding, I think- It looks like it's either premature or too late. Well, the reason I think it would be caught in the middle is that the timing of this particular challenge has to do with, according to Delaware Riverkeeper itself, the way that they have formulated their challenge. It keys off of that August 30th acknowledgement of coverage. So if we accept that premise, the reason it's too late is for the reason that we mentioned in our brief, that 60 days have passed since that sort of acknowledgement of coverage long before they filed this action. Where does that acknowledgement show up? I didn't see it in the newspapers. The acknowledgement shows up, among other things, in the FERC docket itself. And I'd like to direct the Court's attention to one other thing if I could. Mr. Stemplowitz says that there was no way that Delaware Riverkeeper or the Riverkeeper could have had knowledge or notice that these notices of intent and permits were in the offing. In addition to those FERC filings that I mentioned, if you look at Exhibit A to the Delaware Riverkeeper's petition, in this Court, you will see in Exhibit A, this is the notice of intent that they filed, at the top of the header, there is a FERC header. And the reason there is a FERC header dated June 21st is because Delaware Riverkeeper, of course, was a party to the FERC proceeding. That's how they knew. What about the timing here? It's an issue of a stay. That's sort of the original issue that has mobilized us this morning. How would you be hurt by a brief stay during which the merits could be hurt? The reason we'd be hurt by a brief stay, Your Honor, is because in order for all of the contracts that we have in place and the facilities that those contracts serve to be up and running by winter of next year, we need to complete this construction now. That is the reason that we would be harmed by the stay. For the actual transit of the natural gas? Yes. If you look at, I think, the last two exhibits of our motion to dismiss in opposition, you'll see references to those contracts. So that's the reason why we need to keep construction moving. Because if we don't keep construction moving at pace, we will miss that deadline. Even over the winter? Even over the winter. Construction is occurring now. In answer to your question, we are clearing trees and performing the kind of pre-construction that Ms. Biryonic mentioned. Are there parts of the construction plan that could be stayed pending a determination by this Court of the appeal? Are there parts that could be stayed? I know everybody's out there cutting trees. That's fine. I go out and cut trees. But then the pathway is laid, and whether you put a machine in the ground and start digging up stuff, it's going to affect the water quality. Well, to begin with, I don't think that there is any ability for the Court to essentially stay piecemeal this particular project. The construction is moving in parallel. Would you agree that certain portions could be, your engineers could figure out what could be stayed? I don't think, and I certainly don't have the ability here, and I don't think that we have ever conceived of this as being something that could be piecemeal stayable. The construction that is happening is happening in a number of different sites in parallel with each other in order to stay on track. Let me make one more point, if I could, just about timing. Mr. Stemplowitz mentioned that there is no time limitation under their reading pursuant to the Natural Gas Act jurisdictional provision. Of course that can't be true. The Natural Gas Act actually provides for expedited review in this Court of a proceeding brought pursuant to that provision. The provision that he's referring to is a provision that says where the action can be filed that challenges a state agency action. When you look at the timing for that challenge, you look to the underlying state judicial review provision. The reason the Third Circuit didn't go that way is because that wasn't a judicial review provision. That was an administrative appeal provision. What is the state judicial review provision concerning the statute of limitations? Sixty days, Your Honor. So if you conceive of this as a challenge to the general permit, which it almost certainly is, then there would be 60 days from January, I think, 29th of 2015 to challenge the general permit. And the reason I emphasize that- The general permit was first put in place on that date? In January of 2015, yes. After public notice and comment. So if you conceive of that as being what this challenge is, which it demonstrably is from the motion's discussion itself, then that 60 days passed two years ago. But if the general permit were challenged, it would be pretty hard to come up with any concrete harm, or even any act to challenge, because without the notice of intent and the commencement of a specific project, all you have is a sort of a blanket authority. But that is exactly what- So what's there to challenge? But that's what they're challenging. So if you look, I'd refer you to the Sildorf Affidavit, which is Exhibit K to the Delaware River Keeper's stay motion. And what Sildorf says there from paragraphs, and these are the substantive paragraphs, 8 through 14, is here are all the problems with the general permit regime. It doesn't permit individualized notice of underlying notices of intent. It doesn't permit someone to comment on those underlying notices of intent. That is their challenge. That is so. But the reason I'm resisting your question is because that's what they're challenging. They're not challenging- I don't even know what they are yet that I might object to. But it was exactly that challenge, Your Honor, that was brought in this court's Waterkeeper case, in the Ninth Circuit's Environmental Defense Council case, in the Seventh Circuit case that we cite in our brief, in the NRDC case that Ms. Biryonic mentioned. Each of those was a challenge to-the first three were federal, and the last was a state general permit system. Were they successful? In each of those, two of them were successful and two of them were not. And it was based on the nature of the general permits at issue there. The NRDC case that Ms. Biryonic mentioned is the one that's most significant here because that's the case where the Court of Appeals, less than three years ago, blessed the New York general permitting system. That's why she put the emphasis on it that she did. Because for these purposes, to the extent that the general permit's being challenged, the general permit has already been blessed by the Court of Appeals. And that question of state law then is settled. Thank you. Thank you. You've asked for a minute's rebuttal, so we'll hear you now. And I'll respond quickly to the very first point that was made, or the very last point that was made there. To the extent that we would challenge the general permit that was issued in 2015, there was nothing in the language of the SPDES permit that says, there will be no public notice. So there would be no way for us to bring this challenge at that time because there was nothing in the permit at that time that would have prevented public participation. And I think that's an important point. And I think on the merits, when we're talking about cases that have grappled with this issue, we have two cases, the Environmental Defense Center out of the Ninth Circuit and the second case in Waterkeeper Alliance that have sort of aligned with our position. As opposed to the Seventh Circuit in the Texas Independent Producers. So there's a 2-1 sort of split there. In addition to the state courts, the state courts have also grappled with this. We have the NRDC case, which opposing counsel has cited, but they did not cite cases from Michigan and Minnesota, which have dealt with this exact issue we cite to them in our brief, that have been aligned with our position on public participation opportunities for general permits. So in both cases, both at the federal level and the state level where this issue has been examined, both it's a 2-1 split in favor of our position. And I would conclude. You just said that other states, there are decisions that allow for challenges to the general permits. And that just seems to be what your adversary is saying, which is what you're doing here is making a challenge to the general permit, and you had 60 days to do that. Right. So our challenge is fundamentally different from challenging the formulation of the 2015 permit itself. We're challenging New York's implementation of the SPDES permitting program. We clearly here have a permit that was issued by New York that authorizes a specific activity that changed, that had legal consequences that flowed from that decision making. From New York's decision that the notice of intent was complete. That was their decision making. They decided it was complete. Five days after they decided it's complete, it automatically gets issued. That's the consummation of the agency's decision making, and therefore that constitutes final agency action on the part of the department. Thank you. Thank you all. We'll reserve decision.